ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1913.

---

*(Continued from Volume 171.)*

---

WILLIS F. BIEDERMAN, Trustee in Bankruptcy, Respondent, v. INTERSTATE TRUST & BANKING COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted January 16, 1913. Opinion Filed March 1, 1913.

1. BANKS AND BANKING: Contracts: Construction. A bank agreed to extend a line of credit to a customer on invoices for goods sold by him and turned over to it for collection. The credit so extended was to be evidenced by promissory notes which were to be credited with the collections made on invoices from time to time. Upon four invoices being transmitted to the bank, the latter sent a note to the customer in a letter which stated that it covered the four invoices and that upon its return it would be discounted and the proceeds passed to the customer's credit, and that, if the invoices were paid before the maturity of the note, the bank would rebate interest at the same rate. A few months afterwards, in reply to a letter from the customer inquiring about the rebate, the bank stated that, owing to the work involved in computing such rebate, it had made none, and would make none in the future. *Held*, that the letter promising the rebate did not refer only to the four invoices first sent, but bound the bank to allow the rebate in all cases until it sent the letter announcing that it would not continue to do so.

(1)

Biederman v. Trust Co.

2. INTEREST: Recovery: Pleading.    Interest is not to be awarded unless it is prayed for in the petition.

3. ———: ———: Instructions: Nondirection.    Where interest is prayed for in the petition and is recoverable under the facts, it is not error for the jury to include it in their award although it is not submitted in the instructions.

4. APPELLATE PRACTICE: Excessive Verdict: Harmless Error: Instructions.    Where interest is prayed for in the petition and is recoverable under the facts but is not submitted in the instructions, the appellate court will not reverse the judgment on the ground the verdict is for a larger amount than was proved to be due, if the amount of the excess is less than the interest which the jury would have been justified in allowing.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*Lehmann & Lehmann* for appellant.

(1) The verdict is excessive by $2.18. This calls for a remittitur and puts the cost of appeal upon respondent. Cameron v. McAnno, 72 App. 348; Puckett v. Railroad, 25 Mo. App. 650. (2) There was no agreement to allow rebates of interest. 9 Cyc. 276. (a) The fact that the parties themselves did not construe the letters of October 25th and 26th as an agreement to allow rebates should control the court's construction of such letters. 9 Cyc. 588-9; Austin v. Shipman, 160 Mo. App. 206. (3) If the letter of October 25th did constitute an agreement to allow rebates of interest, this agreement was modified and a new one substituted under which no rebates of interest past or future was due to the lumber company, by the letters of May 25 and 27, 1910, and the subsequent acquiescence therein by the lumber company. Welch v. Mischke, 154 Mo. App. 728; Cannon-Weiner Co. v. Boswell, 117 Mo. App. 476.

*Eliot, Chaplin, Blayney & Bedal* for respondent.

(1) The verdict is not excessive; respondent was entitled to interest, and is the only one that can complain because the jury failed to properly calculate the interest and give him less than he was entitled to. (2) The appellant requested inconsistent instructions relating to rebates of interest and is bound by the instruction which the court gave. Railroad v. Knapp, Stout & Co., 160 Mo. 396; Anderson v. Railroad, 161 Mo. 411; Tetherow v. Railroad, 98 Mo. 74. (3) The respondent, as a matter of law, even in the absence of an agreement therefor, was entitled to rebates of interest for invoices paid prior to the maturity of the notes for which they were security. Pullis v. Somerville, 218 Mo. 624. (4) The letter of October 26, 1909, from the trust company to the lumber company, contained an offer to allow rebates of interest on invoices collected prior to the maturity of the notes, which was was accepted by the lumber company's letter of October 27th. This contract was modified by the letter of November 2d, in which one dollar a car was charged by the trust company for handling the invoices. (5) The contract of October 26th, as modified November 2d, remained in effect until May 27, 1910, and was then only modified to the extent of not allowing rebates of interest on subsequent notes discounted. The fact that the lumber company sent notes for discount after the receipt of this letter would not affect the lumber company's right to rebates of interest which had theretofore accrued. 9 Cyc. 595; 40 Cyc. 262.

REYNOLDS, P. J.—Action by plaintiff, as trustee in bankruptcy of the Robinson Timber & Lumber Company, against defendant to recover money claimed to be due as the result of dealings between the lumber company and defendant. Plaintiff claims in his petition that $850.23 were due, by reason of that sum hav-

ing been improperly charged against the lumber company and withheld from the trustee for services and expenses of an attorney in the collection of certain invoices in the hands of the bank and for telegrams, and that $359.23 were due for rebates on interest agreed to be paid but withheld. Judgment is demanded for $1209.46 and interest at six per cent per annum from October 1, 1910, the date of demand.

At the trial it was admitted that the amount of the rebate on account of interest rebates was $333.96, not $359.23. Verdict was rendered for plaintiff for $1187.07, from which plaintiff remitted seventy cents, and judgment being rendered for $1186.37, defendant duly saving exception, has appealed to this court.

It is conceded by counsel for appellant that there was evidence which warranted the jury in finding that $850.23 had been improperly charged and retained by defendant and that as to those items and this sum the verdict is conclusive. Those counsel, however, argue that no rebate on account of interest was recoverable, and that if any was, then the verdict is excessive in the amount of $2.18, and this, say counsel, calls for a remittitur and puts the costs of appeal upon respondent. Hence the only assignments of error here made are that the judgment is excessive in the amount of $2.18, and that under the evidence plaintiff was not entitled to recover any sum for rebate of interest, and, therefore, (a) an instruction numbered 2, given for plaintiff, was erroneous, and (b) the refusal of the court to give instructions numbered 1 and 2, requested by defendant, was erroneous.

The Robinson Timber & Lumber Company, hereafter referred to as the lumber company, a concern formerly engaged in the lumber business, going into bankruptcy and now represented by the trustee, desiring banking accommodation, entered into an arrangement with appellant, referred to hereafter as the bank, to furnish it financial accommodation.

The first negotiations for accommodation appear to have been conducted verbally between a representative of defendant and a representative of plaintiff. Taking up the matter which had thus been verbally discussed between their representatives, on the 20th of October, 1909, defendant wrote to the lumber company that its representative with whom the matter had first been taken up was absent, and asked the lumber company to write detailing the service it desired the bank to render it, and that if that was done the matter would receive prompt attention. Replying to this letter, the lumber company, on the 21st of October, wrote to the bank, stating that the former desired to use part of their invoices of shipments of lumber, taking credit for seventy-five per cent of them, after deducting the estimated freight, and carrying the bulk of their account with the bank, further writing that Mr. Novel, who was the party representing the bank with whom the matter had been first taken up by the representative of the lumber company, had stated that the bank would give the latter a credit to the amount of $15,000, and that that was satisfactory to it. The letter further stated that the lumber company had a good line of customers, a great many of whom discounted their bills, others settling by note. After setting out the terms upon which the lumber company was in the habit of selling to its customers, the letter concluded with the statement that the lumber company would be pleased to hear from the bank at its earliest convenience and with the hope that the bank would consider the matter favorably.

In answer to this letter, the bank wrote that it saw no objection to making some such arrangement as that mentioned. It futher stated that the bank would like to have the lumber company obtain a designated stamp; that it might begin sending invoices to the bank whenever desired, and that the bank would place seventy-five per cent of them to the credit of the lumber

company subject to check. Inclosed with this letter was a signature card, which proper officers of the lumber company were requested to sign, that company being also requested to pass proper resolutions authorizing the arrangement and send the bank an abstract from the minutes of the proceedings of the lumber company, attested under the seal of the company and by its officers.

Acknowledging the receipt of this letter the lumber company, on the 22d of October, transmitted four invoices with bills of lading attached and advised the bank how it would like to have the matter handled with respect to collections from customers. The letter further stated that as the lumber company understood from Mr. Novel that the bank would require a note executed with each invoice, and as it had no blank notes, it would not then carry out that part of the agreement. Inclosed with the letter were the signature card and copy of the resolutions adopted by the board of directors of the lumber company.

On October 26, 1909, the bank wrote the lumber company, evidently in answer to the last mentioned letter, and inclosing a note drawn at sixty days for $646.38, stated that it covered the four invoices mentioned in the preceding letter, enumerating them. This letter then proceeds: "Upon return of this note properly signed we shall be pleased to discount the same at eight per cent and pass the proceeds to your credit. *In the event of these invoices being paid at any time before the maturity of the note we shall rebate you interest at the same rate.* We are inclosing a number of blank notes and we would suggest that you sign a note and send to us together with each batch of invoices. It would also be advisable to have you send your invoices say once a week in order to make the note as large as possible and avoid a great number of notes in small amounts. In the event of our having difficulty in collecting any of these invoices at maturity

we shall be obliged to promptly charge amount of advance on same to your account crediting your note therewith. Upon payment of the invoices that are securing your note we will return the bills of lading to you as requested. We believe that this method of handling the account will prove more satisfactory than our allowing an open overdraft to be closed out when we have invoices amounting to a round sum, as we had first intended to do. Should you have any suggestions in connection with the present method we would be pleased to have them.''

This is the letter upon which the contention in this case is based, the vital clause being the one which we have italicized.

Upon the following day the lumber company wrote the bank, acknowledging the receipt of this letter, and inclosed the note referred to as covering the invoices mentioned in the letter, further saying that the lumber company did not know of any better plan to suggest than the one outlined in the foregoing letter and that it would send the bank its paper once a week unless the lumber company should accumulate a considerable amount in less time.

The next day the bank wrote the lumber company, acknowledging the receipt of that letter and saying they had discounted the sixty-day note above referred to and had credited the account of the lumber company as per memorandum inclosed.

In a letter to the lumber company of the 2d of November, the bank wrote that they had discounted another note of the lumber company and had passed the proceeds to the credit of the lumber company, inclosing a memorandum showing the discount. This letter continued: ''You will note that we have charged a dollar a car in addition to our interest for handling this transaction. On all future notes we shall be obliged to make this charge, as we find that the same is necessary to cover the trouble and time that we shall

be put to in keeping track of these various invoices. We omitted to make this charge on your first note and, of course, will not call upon you for the same."

On the 15th of November the bank wrote to the lumber company acknowledging the receipt of the latter's note for a specified amount together with invoices securing it and then continued: "In all payments that are made against your notes, we will retain the invoice, which has been returned to us together with the freight bill until the note has been liquidated in full when we will return all the papers together with the cancelled note. If you have any objection to this arrangement and would prefer that we return the papers with each payment, we would thank you to so advise us."

The lumber company wrote, stating that this was satisfactory.

Other correspondence followed, covering remittance of notes, invoices, etc., in the usual course of the business, otherwise not necessary to reproduce, until the 25th of May, 1910, when the lumber company wrote to the bank concerning a note which had been sent in payment of a certain invoice and also inclosing a check for a collection which it had itself made on an invoice sent to the bank. The letter then proceeds: "In this connection would call your attention to your letter of October 26, 1909, in which you say: 'Upon return of this note properly signed, we shall be pleased to discount the same at eight per cent and pass the proceeds to your credit. In the event of these invoices being paid before the maturity of the note, we shall rebate you interest at the same rate.' Up to the present time we have no record of the manner in which the interest is rebated to us. Do we understand that we have a credit which has not yet been reported for these items?"

Answering this letter, the bank, on May 27, 1910, wrote the lumber company, after referring to various

transactions between them, as follows: "We note what you have to say with reference to our rebating you the interest upon the advance made covering invoices which may be paid prior to the maturity of your note. It was our intention when we first undertook this class of loans to rebate the interest, but the payments come at such irregular intervals and in such uneven amounts that we find that it would be an endless task to figure the rebate to which you are entitled. For this reason we have made no rebate of any interest as a result of invoice being paid prior to the maturity of your note nor is it our intention to permit any rebate in the future. I believe that you will understand that the amount of labor and care required in keeping track of your loans and the payments made upon them is such that it is not only not fair to rebate the interest in the case above described, but if anything, our charge of one dollar a car should be increased. Inasmuch as we made this flat charge in the beginning we will make no changes and will conduct your business along the lines we have done heretofore. We would be glad to have you write me if this is not entirely satisfactory."

No answer to this appears in the abstract.

On June 11, 1910, the bank wrote the lumber company, calling its attention to the fact that it had largely exceeded its $15,000 credit and declining to make further discounts on its account until some of these past-due obligations were paid off.

Various other correspondence followed, none, however, touching on the interest rebate, with the result that the lumber company, being unable to meet its paper and becoming financially involved, the bank turned over a number of the accounts and invoices to an attorney, who proceeded to the collection of something over $7000 on the outstanding accounts. Making a charge for these attorney's fees and for his expenses, as well as for some telegraphing, the bank ren-

dered an account to the receiver who had been appointed for the lumber company in the bankruptcy proceedings, showing that the amount due from the bank to the lumber company, after giving credit for amounts realized on collections, was $40.56, for which amount it inclosed a check to the order of the receiver as in full payment of the balance of the account between the lumber company, or its receiver, and the bank. The receiver returned this check, refusing it as in full settlement and demanded payment from the bank of $1168.90, this amount made up of the items before set out. The bank declining to acknowledge the correctness of this, this present action was brought, as before noted.

The instruction, numbered 2, of which complaint is made and which was given by the court at the instance of plaintiff, is substantially as follows: That by its letter to the lumber company, of date October 26, 1909, defendant agreed with the lumber company to allow that company a rebate of interest where an invoice which secured a note was paid before the maturity of the note at the rate of eight per cent per annum, and if the jury found and believed from the evidence that there were invoices so paid, then plaintiff was entitled to recover for the amount of the rebate of interest as long as the agreement was in effect but not after the receipt by the lumber company of the letter written to them by defendant on the 27th of May, 1910.

The instruction, numbered 1, asked by defendant and refused, was to the effect that the lumber company was not entitled to any credit against defendant for any rebates of interest mentioned in the evidence. That numbered 2 is to the effect that the lumber company is not entitled to any credit against defendant for the rebates of interest mentioned in evidence, excepting as to a rebate on the one note mentioned in defendant's letter of October 26, 1909.

We are satisfied from reading the testimony in full and instructions given and those refused, that the court submitted the case to the jury upon the proper theory of the law under the facts. We cannot agree to the contention of the learned counsel for appellant that the letter of October 26th related only to those four particular invoices and to the payment of the note covering them. The whole correspondence between the parties in evidence before the jury, was sufficient to justify the court and the jury in concluding that that offer of a rebate in interest was intended to apply to all the transactions and not to this single one mentioned in the letter of that date. Nothing in the correspondence tends to show that the parties had abrogated this arrangement or that it had not remained in force, certainly so far as the lumber company had any reason to believe, until the receipt of the letter of May 27, 1910. Then it was ended by the bank, and so the court, in a specific instruction, told the jury. Under this view of the law and the facts the two instructions were properly refused. We hold that the jury were correctly instructed and we see no reason to disturb its finding.

We are unable to agree with learned counsel that the verdict is excessive by the amount claimed, $2.18. While it is true that the court did not instruct the jury that plaintiff was entitled to interest, if the jury found for plaintiff, the question of interest was within the issues of the case. Plaintiff specifically demanded it in the petition. We are inclined to agree with the learned counsel for respondent, that if anyone has the right to complain of this amount of $2.18, which is all that can be considered as covering interest, it is respondent and not appellant. Reckoning the interest, not from October 1st, the alleged date of the demand, but from the date of the institution of the action, October 31, 1910, until the date of the verdict, March 27, 1911, it would amount to something over $29, a much

larger amount than was allowed. It is true interest is not to be awarded unless prayed for in the petition. But we know of no rule that denies it when asked, even if not specifically mentioned in the instructions. With a clear legal right to legal interest, as here, we will not reverse as for an excessive verdict where it appears that the so-called excess is largely below what the interest would really be.

We see no error to the prejudice of the appellant in the trial of this cause or in its result. The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.*, concur.