WILLIAM A. MAYFIELD, Respondent, v. GEORGE O. RICHARDSON MACHINERY COMPANY, Appellant.

Kansas City Court of Appeals. May 2, 1921.

1. **EVIDENCE: Indefinite Warranty: Parol Evidence Admissible to Explain Indefinite Warranty.** In an action for damages for breach of a written contract governing the purchase and sale of a 30-horse power farm tractor, where the tractor sold was "to be of specification as shown in" a certain circular in which, among the many specifications of the machine, was the "number of plows pulled (slow speed) 8-12," and it was warranted that the machine was "capable of doing as good work as similar articles of other manufacturers," *held*, that neither the provision in the contract that no promise of an agent as to warranty shall be binding unless ratified in writing by an executive officer of the seller at its

home office, nor the rule that parol evidence was inadmissible to show that the buyer told defendant's agent that he was going to use a certain variety of 18-disc plow, and the agent said it would be all right, the contract being indefinite as to the kind and size of plows stated, not showing whether 12, 14 or 16 inch plows were meant, nor whether they were disc or moldboard plows, would prevent plaintiff from showing that it took no more power to pull an 18-disc plow similar to that specified, than it did to pull one of nine 14 inch moldboard plows, which was within the number of plows the circular specified the tractor could pull.

2. SALES: Breach of Warranty: Damages: Under Contract to Return and Rescind on Failure of Warranty, as Exclusive Remedy, Seller Refusing to Accept Return, is Liable for Damages for Breach of Warranty. Where, under contract for sale of tractor, in case of failure of warranty, the only right of purchaser was, after due notice thereof, to have another tractor or a return of freight money and notes given for the purchase price, and upon such failure of warranty, although the purchaser had complied with conditions precedent, and returned the tractor, the seller, neither gave plaintiff another in its stead nor returned the "money and notes" as agreed, the seller's right to confine the purchaser to his remedy exclusively upon the contract was lost or waived, such exclusive remedy being conditioned upon seller's compliance with contract; and the buyer was restored to the right to recover the usual damages for breach of warranty.

3. ———: Contracts: Construction: Breach of Warranty: Remedy: Limitation of Remedy for Breach of Warranty Must be Clearly Expressed. Where parties to a contract agree upon a particular remedy for a breach of warranty and expressly and clearly intended to unqualifiedly limit the remedy of purchaser to the one therein prescribed, the contract will be given such construction, but such contracts do not constitute a limitation of the purchaser's remedies for a breach of warranty, unless such intention is clearly expressed by the language and terms of the warranty.

4. ———: ———: Breach of Warranty: Damages: On Breach of Warranty of Tractor Purchaser Entitled to Recover Freight Money and Amount he was Compelled to Pay on Notes Given in Payment Therefor. Where a warranty as to a tractor sold was broken, in that, the same was worthless, the purchaser was not only entitled to the damages sustained on account of the breach of warranty itself, but also the damages arising from defendant's violation of its agreement to return his "money and notes" which would include the freight money and the amount he was finally compelled to pay to get rid of the notes after litigation as to their validity.

Mayfield v. Richardson Mach. Co.

5. ——: ——: ——: ——: **On Breach of Warranty Purchaser Entitled to Recover Expense in Endeavoring to Make Machine Work.** On breach of warranty of tractor purchaser is entitled to recover expense incurred in endeavoring to make machine work.

6. ——: ——: ——: ——: **On Breach of Warranty Purchaser Entitled to Recover Loss of Season's Use of Land.** Where machine warranted to pull a certain number of plows, was sold for plowing purposes and was purchased for that work as shown by contract, purchaser on breach of warranty was entitled to recover the loss of the rental value of one season's use of land he was to plow.

7. **DAMAGES: Breach of Contract: Should be Equal to Injury and Confined to Loss Naturally and Proximately Resulting.** The general rule of damages for breach of contract is that the compensation should be equal to the injury, subject to the condition that the damages be confined to those naturally and proximately resulting from the breach and be not uncertain or speculative nor outside contemplation of the parties.

8. **APPEAL AND ERROR: Verdict: Remittitur: Evidence of Damages Erroneously Admitted held not Reversible Error as Excess of the Verdict Could be Corrected by Remittitur.** If the plaintiff were not entitled to recover the expense incurred in the unavailing attempt to make machine work, nor the loss of the rental value of land he lost the use of, such would not be cause for reversal under section 1513, Revised Statutes 1919, as the error did not materially affect the merits of the action, and the excess of the verdict could be remedied by requiring a *remittitur* of the same.

Appeal from the Circuit Court of Buchanan County.— *Hon. Thos. B. Allen*, Judge.

AFFIRMED.

*Culver, Phillip & Voorhees* for respondent.

*Ryan & Zwick* and *Ellis, Cook & Dietrich* for appellant.

TRIMBLE, P. J.—This is an action for damages for various breaches of a written contract governing the purchase and sale of a 30-horse power farm tractor.

Plaintiff, at the time of the purchase and the execution of said contract and the alleged breaches thereof, resided in Oklahoma. Defendant is a Missouri corporation with its principal office at St. Joseph.

The contract called for the purchase of the tractor aforesaid, "Tractor to be of specification as shown in circular M-2-14," and the clause containing the warranty and other agreements and conditions now in question is as follows:

"The articles specified . . . are warranted . . . to be of good material, well made and with proper management, capable of doing as good work as similar articles of other manufacturers. If said machinery, or any part thereof, shall fail to fill this warranty, written notice by registered letter shall be given to said Corporation, St. Joseph, Missouri, and to the party through whom the machinery was purchased, stating wherein it fails to fill the warranty, and time, opportunity and friendly assistance give to reach the machinery, and remedy any defects. If the defective machinery cannot be made to fill the warranty, it shall be returned by the purchaser to the place where received and another furnished on the same terms of warranty, or money and notes to the amount represented by the defective machinery shall be returned, and no further claim be made on said Corporation."

The circular M-2-14 was given to plaintiff at the time contract was made; and among the many specifications of the machine therein contained, was the following: "Number of plows pulled (slow speed) 8-12."

The plaintiff agreed to pay the freight from factory to the point where plaintiff was to receive it, and receive credit therefor on the price, and to execute notes aggregating $2500 for the purchase price, as follows: One note for $835 due September 1, 1914; one for $835 due September 1, 1915; and one for $830 due September 1, 1916. Said notes were made payable at the Capron State Bank, Capron, Oklahoma, and they provided for interest at 7 per cent per annum if paid on or before

maturity, and 9 per cent per annum from date if not so paid. There was also a provision for the payment of attorney's fees in case the notes were placed in the hands of an attorney for collection. The notes were executed at Capron, Oklahoma, before the machine was shipped.

The contract and notes were executed and delivered, and the tractor was shipped by defendant to plaintiff at Capron, Oklahoma, on June 4, 1914. Plaintiff took the tractor out to his farm but the tractor was unsatisfactory and worthless, not being of good material or well made, nor would it do the work according to the rating and terms of the contract. Plaintiff promptly notified defendant by registered letter, and defendant made two attempts to remedy the tractor's defects, but without success. Thereupon, plaintiff returned the tractor to the place where he had received it, notified the defendant by registered letter, and demanded the return of his notes and the freight he had paid, which it is conceded was $140.

The defendant, however, refused to take the tractor back, declined to replace the defective machine with another and also refused plaintiff his notes and money.

At some time before the maturity of the notes, but whether before or after the rejection of the tractor does not appear, the defendant negotiated the notes to the Union National Bank of Massilon, Ohio. After their maturity, said Bank brought suit on them, the first thing plaintiff knowing of said bank having the notes was when he was sued. Believing and being advised that, under the law as it then stood in Oklahoma, the notes were non-negotiable and that he had a good defense to them on account of the equities between him and the payee, plaintiff resisted payment, under the authority of Randolph v. Hudson, 12 Okla. 516. The trial court upheld plaintiff's contention as to the non-negotiability of said notes; and upon appeal, the Supreme Court of Oklahoma, in Union National Bank v. Mayfield, 169 Pac. 626, affirmed the judgment. However, later, the Supreme Court of Oklahoma reversed the judgment and held that the notes were ne-

gotiable. [Union National Bank v. Mayfield, 174 Pac. 1034.] The Union National Bank being holder for value and without notice, was not affected by any equities between the maker and payee, so plaintiff herein was compelled to pay said notes, which he did on October 18, 1918, with interest at 9 per cent, making the total payment amount to $3700.

Thereafter, on November 30, 1918, plaintiff brought this suit for the breaches aforesaid. The case was tried on May 13, 1919.

The damages claimed and sought to be recovered by plaintiff was the amount he was compelled to pay on said notes plus the freight he had paid and also the damages he had sustained by way of expense in trying to operate said tractor and the loss of the rental value ($2 per acre) of one season's use of the land which the seller knew plaintiff was intending to plow with said tractor and sow in wheat. Over the objections of defendant, the trial court admitted evidence as to these items and, under instructions, authorized the jury to return a verdict in favor of plaintiff for the amount he was finally compelled to pay on said notes, as well as for the expenses he had incurred in trying to operate the tractor and for the rental value of the land for the season and use of which he lost by reason of the failure of the tractor to do the work it was warranted to do. The jury returned a verdict in plaintiff's favor for $3897.75, and defendant has appealed.

No complaint is made as to the sufficiency of the evidence to establish the jury's finding that the tractor was worthless and not in accordance with the contract and warranty. The record contains ample evidence that the fly wheel was smaller than the one designed for it, that the crank shaft was too short and had been pieced or lengthened out, that the "compression" was bad, that little power could be developed, that the fly wheel was "wobbly" on its shaft, and that the tractor would not do the work according to the terms of the contract. In other words, there was ample evidence that the machine was not "well made and, with proper management, capable

of doing as good work as similar articles of other manufacturers," and the evidence amply tends to show that the tractor was worthless.

Defendant's first complaint is that certain evidence was improperly admitted. This evidence was that in plaintiff's locality when a tractor was used, disc plows were ordinarily used; that it took less power to pull disc plows than it did mouldboard plows; that two 8-inch disc plows wouldn't pull any harder than one 14-inch mouldboard plow; that the power required to pull a plow of 18 discs would about equal the power required to pull 9 plows each having a 14-inch mouldboard; than when plaintiff was considering buying the tractor he told defendant's agent that he was going to use an Emerson 18 disc plow and the agent said it would be all right; that in attempting to plow with it plaintiff used an Emerson 18 disc plow and could not develop enough power to pull it, except at such a shallow depth as was wholly insufficient; 'that the soil in which the tractor was attempted to be used was the same kind of land in that community which is cultivated and sown in 'wheat.

The defendant's objection to this line of evidence is that the warranty being express, there could be no implied warranty of fitness to do the purchaser's particular work, or to pull a particular plow, a particularly large plow of the purchaser's selection of disc type rather than of mouldboard, or to plow at a particular depth on purchaser's land. The objection to the evidence as to what plaintiff, prior to the purchase, told defendant's agent what work he proposed to do with the tractor and the size of the plow he was going to use with it and the agent's reply thereto, further rests upon the fact that the contract contains a provision that "no promises, whether of agent, employee or attorney, concerning the articles herein purchased, the working of or warranty thereon . . . shall be binding on said corporation unless made and ratified in writing by an executive officer at its home office;" and also upon the

rule that all verbal statements and representations are merged in the written contract and, if not appearing therein, are excluded thereby. Doubtless the objection would be good as to either one or both of these grounds had the evidence been introduced and relied upon to *create* or *enlarge* the warranty contained in the contract, but it was not offered for that purpose. So far as the use of the tractor for *plowing* is concerned, the warranty is that the machine will be capable of doing *as good work* as similar articles of other manufacturers, and concededly *plowing* is such work as is necessarily within the scope of a farm tractor. Indeed, the contract, by specific statement that the tractor shall ''be of specification as shown in circular M-2-14'' made the circular a part of it, and defendant's answer admits that the defendant sold plaintiff the tractor ''of the specification as shown in defendant's circular M-2-14.'' Now, as hereinbefore stated, this circular said the number of *plows that could be pulled* at slow speed was from eight to twelve. There was nothing else stated as the size or kind of plows meant, and clearly the contract was *indefinite* on this subject, not showing whether 12, 14, or 16-inch plows were meant, nor whether they were disc or mouldboard plows. The evidence is that when the tractor in question was demonstrated to plaintiff by defendant's agent, the demonstration was made with an 18 disc ''Emerson'' plow; that plaintiff told defendant that this was what he was going to use with the tractor, and purchased an 18 disc Emerson plow of that (the Emerson) company, and the defendant loaded it into the car and sent it along with the tractor when it was shipped to plaintiff. The evidence is further that, when the defendant's agents tried unsuccessfully to make the plow work, no complaint or objection was made that the tractor was overloaded. Under the evidence it took no more power to pull an 18 disc Emerson plow than it did to pull one of *nine* 14-inch mouldboard plows which was within the number of plows the circular specified the tractor could

pull. The demonstration by the agent was with an 18 disc Emerson plow. The contract being *indefinite* as to the kind and size of plows stated, it was proper to show that both disc and mouldboard plows were used in plaintiff's locality, and also to show the acts and conduct of the parties to the contract in order to throw light on the question of how defendant interpreted the contract as to the matter that was indefinite and obscure therein.

It is next contended that under the contract, in case of a failure of warranty, the only right of the plaintiff purchaser, was, after due notice of such failure, to have another tractor or a return of the freight money and notes given for the purchase price. In other words, the contention is this was to be the *full extent* of defendant's liability for the breach of warranty, and the contract made this measure of his damages therefor *exclusive*. Hence the defendant says the only recovery plaintiff is entitled to have, if any, is the freight money he paid (shown to have been $140 and conceded to be that much), and the value of the notes—i. e., the amount plaintiff would have had to pay had he redeemed them at the earliest opportunity.

There is an almost innumerable array of authorities stating, in general terms, the rule that parties to a contract may stipulate for a special remedy in case of a breach of warranty and where this is done they are limited and bound by the remedy thus provided, and such stipulation furnishes the basis of the complainant's rights as to the breach of warranty and the measure of damages for the breach; but in almost every one of the many cases we have examined, the suit was either one wherein the purchase price was all that was demanded or defended against, or where the complaining purchaser had failed to follow out the procedure stipulated as a condition precedent to an enforcement of the warranty. Of course, in such cases, the question of whether the complaining purchaser was entitled to anything other than a release from or a

return of the purchase price was in no wise involved. But the present case does not fall within the category of either of the above classes of cases. Here, the plaintiff purchaser *did* comply with the conditions precedent and *did* return the tractor; and the defendant neither gave plaintiff another in its stead nor returned the "money and notes" it agreed to do. The only case to which we have been cited, or which in our independent investigations we have been able to find, which is squarely in point and upholds defendant's contention, is Helvitia Copper Co. v. Hurt-Parr Co., 171 N. W. 272, 274. The warranty in that case contained a clause similar to the one herein, providing for return of the article purchased, if it was not as warranted, and for a refund of the purchase price "and no further claim is to be made." Plaintiff in that case offered to return the article but the company refused to give another or to refund the money. Suit was for general damages, and the trial court submitted the case on the theory that the refusal of the company to give another machine or to refund the money entitled plaintiff to sue for all damages he sustained. The appellate court said: "This we think was error. We do not understand that a refusal to receive a return of the tractor and to refund the price, made perhaps in good faith, and under a bona-fide claim that refundment was not due, will give rise to the right to sue for damages for breach of warranty, a right which was expressly contracted away." The court goes on to say they do not "find any decision directly in point" but that "The contract provides the remedy for its breach by defendant. Breach by defendant will not give rise to another remedy." It seems to us that the purchaser's right to sue for general damages for the breach was not *unconditionally* "contracted away" but that the agreement to make no further claim on the company was conditioned on the agreement of the company to either give another machine or refund the money. In the case of American Foundry, etc., Co. v. Board of Education, 131 Wis. 220, 226, court say:

"Upon being so notified of the failure the plaintiff was *bound by the contract to do the one thing or the other.*" The agreement of the company that it would do this is the basis and the condition, and the *only consideration,* for the purchaser's giving up his right to general damages. In the Wisconsin case just cited, the suit was by the seller for the balance of the purchase price, but the defendant purchasers *counterclaimed* for general damages, in excess of the amount they had paid. The jury found a verdict not only releasing defendants from paying the balance due on contract but also gave them a verdict for the amount they had paid and for other damages they had sustained. The plaintiff appealed, but the verdict was sustained and the judgment was affirmed. In 24 R. C. L. 250, sec. 528, it is said: "The parties to a sale may be an express provision limit the right of the buyer, in case of a breach of warranty, to a return of the goods and recovery of the price, and where such is the case the buyer cannot maintain an action for damages *unless* he has tendered a return and the same has been refused by the seller;" (italics ours). In the same volume of said work at page 253, section 531, it is said: "If the buyer has duly tendered a return and the seller refuses to accept the same, the buyer may then resort to his action for damages or defend against an action for the price."

No doubt if the parties to a contract agree upon a particular remedy for a breach of warranty and expresly and clearly intend to unqualifiedly limit the remedy of the purchaser to the one therein prescribed, the contract will be given this construction, but such contracts do not constitute a limitation of the purchaser's remedies for a breach of warranty unless such intention is *clearly expressed* by the language and terms of the warranty. [Nave v. Powell, 96 N. E. 395.] It is elementary that where the form and wording of the contract is the work of one of the parties, if there is any ambiguity in the meaning or construction of any part of it, such will be resolved against him and in favor of the other

party; and it is also elementary that courts will construe the language of a contract, where there is room for construction, according to the intention of the parties, and this intention will be gathered from the language used in a contract as a whole, and from the surrounding facts and circumstances. Now, the contract in this case clearly, it seems to us, does not unconditionally limit the purchaser's rights to a return of the machine and the receipt of another or a return of the purchase money. Such limitation follows and is coupled with and is necessarily dependent upon, the agreement of the company that it will do either one of the two things above mentioned. To say that the purchaser agreed that, *at all events,* he would make no other claim on the Company, is to read something into the contract that is not there. In Wilson v. Nichols, 139 Ky. 506, 514, it is held that contracts, such as in the case at bar, do not leave the buyer entirely without remedy if he sustains damages by reason of the failure or refusal of the seller to comply with his warranty (i. e., giving him a good machine or returning his ''money and notes''), since if the purchaser is compelled to and does return the machine because the seller fails or refuses in a reasonable time after notice to comply with his warranty, the purchaser has a cause of action against the seller for damages resulting to him. In Allen v. Tomkins, 136 N. C. 208, 211, it is said that if the seller upon demand for a new machine in accordance with the terms of his contract, refuses to comply therewith, then the provision as to remedy no longer applies, and the purchaser may have recourse to the ordinary remedies for a breach of warranty. In Warder v. Robertson, 75 Ia. 585, 588, it is said: ''When the breach occurred, and they (the sellers) neglected to perform their undertaking, he (the purchaser) had the right, independent of the contract, to rescind the sale because of such breach and neglect. It was competent for the parties to make provision as to the course to be pursued in case of a failure of a warranty . . . . But when

plaintiffs (the sellers) neglected to perform the undertaking on their part, the performance of which was precedent to defendant's right to avail himself of the remedy provided by the contract, its remedial provisions were *abandoned,* and he could avail himself of such remedies as would have been open to him if that condition had never been embodied in the contract." (Italics ours). It is true, in that case, the return of the machine may have been permissive rather than mandatory, but the principle enunciated and here considered would seem to apply equally to a case where the return was mandatory on the purchaser. And it would seem that in a great many of the cases where it is said, in general terms, that a contract, such as the one in the case at bar, gives a purchaser an "exclusive remedy" and limits him to that, the meaning is that he is limited to the *course to be pursued,* and not that he is limited to a mere rescission of the contract if he has pursued the course prescribed, and the other party has refused to perform on his part. The purchaser has the right of rescission independent of the contract and if the provision as to rescission—i. e., return of machine and receipt of another or get his money back—is violated by the seller, what consideration has been given the purchaser for surrendering his right to pursue his legal remedy for *all* damages lawfully accruing to him from the breach?

That such is the proper effect to be given to the refusal of the company to comply with the agreement on its part is further supported by the fact that the contract nowhere expressly says the purchaser is, *at all events,* limited to a rescission of the contract (which of course he is, if his only recourse is to merely get his money back), and also by the fact that the contract elsewhere provides that all warranties shall be void if the purchaser does not comply with the terms of the contract on his part. To say that the contract limits the purchaser's damages on account of a broken warranty to merely a return of the purchase price, *even if* the seller

*does not comply with his agreement* to give a new machine or return the price, while at the same time the contract provides that if the purchaser violates the terms of the contract on his part, the seller is relieved of its warranty, is to put a construction on the whole contract that we are unwilling to adopt.

The idea expressed by the court in the Helvetia Copper Co. case, *supra,* that breach by defendant will not give rise to another remedy, may be proper in that case in view of the sole ground upon which that suit was brought, namely, on a breach of the warranty itself and not a breach of the agreement to comply with the obligation of the seller to give a new machine or return the purchase price. But such theory cannot be applied to the case at bar, since the petition declares on different breaches of contract, including the breach in relation to the warranty as well as the breach of the agreement that the company, upon failure of the warranty and notice thereof and return of the property, would either give plaintiff a good machine or return the freight money and notes.

We are, therefore, of the opinion that the plaintiff was entitled to at least recover, not only the damages he had sustained on account of the breach of warranty itself, but also the damages arising from defendant's violation of its agreement to return his "money and notes." This would at least include not only the $140 freight money and the value of the notes *as of the time* he could have first redeemed them without a contest as to their validity, but the amount he was *finally* compelled to pay in order to get rid of them, when the Supreme Court of Oklahoma at last decided the notes were negotiable. The plaintiff was not required to decide for himself, and at his own risk, the question of law as to the negotiability of the notes. Had he done so and paid the notes without making his defense, he would doubtless have been met here with that objection.

The contention of defendant that plaintiff is not entitled to recover the expense he was at in endeavoring to

make the machine work because the contract of purchase clearly contemplates that the purchaser should use the machine to determine whether it came up to the warranty, proceeds on the assumption that the purchaser's damages are limited at all events to a return of the purchase price, and ignores the breach of the company's contract that the machine was well made and would work as others of similar character and that if it did not they would give him another or return his purchase ''money and notes.'' The same is true as to the loss of the rental value ($2 per acre) of one season's use of the land he was to plow. This was not under any implied warranty of fitness of the machine, for the contract expressly provided that the machine would pull from 8 to 12 plows and would do that work as well as other tractors of similar kind. The machine was sold for plowing purposes and was purchased for that work as shown by the contract itself, and this feature does not therefore rest upon the *oral* promise of defendant's agent. Nor was such loss not within the reasonable contemplation of the parties, nor could it be excluded as being within the category of lost profits. The rental value of land is something definite and easily capable of being ascertained, not subject to elements of uncertainty, contingency, competition, etc., as are profits in a business. The general rule of damages for breach of contract is that the compensation should be equal to the injury, subject to the condition that the damages be confined to those naturally and proximately resulting from the breach and be not uncertain or speculative nor outside the contemplation of the parties. [Minneapolis Threshing Machine Co. v. Bradford, 227 S. W. 628.]

Even if the plaintiff were not entitled to recover the expense incurred in the unavailing attempt to make the machine work, nor the loss of the $2 per acre rental value of the land he lost the use of, still this would not necessarily call for a reversal of the case. The $140 freight expense is concededly correct and recoverable. The amount plaintiff was compelled to pay on the notes

October 18, 1918, was a little over $3700 and this with the freight bill of $140 would aggregate $3840. The verdict, being for $3897.75, is only $57.75 more than the amount plaintiff was actually compelled to pay out in cash on the freight and notes themselves, to say nothing of any other item of damage. If, in addition to the amounts thus actually paid out in cash by plaintiff on these two items alone, he be given interest at six per cent from the time they were paid until the date of the trial, May 19, 1919, the result would be to bring the total far above the verdict and more than wipe out the aforesaid $57.75. We do not construe the petition as asking for interest, however. Certainly it does not specifically ask for it, and hence interest cannot be relied upon to absorb the aforesaid $57.75. This would not call for a reversal of the judgment and a remand of the cause. Even if it were error to admit the evidence as to the last two items of damage, we cannot "believe that error was committed . . . materially affecting the merits of the action." [Sec. 1513, R. S. 1919; King v. St. Louis, 250 Mo. 501, 514; Jones v. Prudential Ins. Co., 173 Mo. App. 1, 17; Bierderman v. Interstate, etc., Co., 172 Mo. App. 1, 12.] If it were erroneous to admit the evidence and interest be not allowable, still the excess of the verdict could, in that case, be remedied by requiring a *remittitur* of that amount. [ Reading v. Chicago, etc., R. Co., 188 Mo. App. 41, 48-9.] We do not, however, regard the evidence as being inadmissible, and hence will not require a *remittitur,* but will affirm the judgment as it stands. It is so ordered. All concur.