## Bechtold, Appellant, *v.* Murray Ohio Manufacturing Company.

424

Argued January 20, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN and BARNES, JJ.

*Aaron S. Swartz, Jr.,* with him *Paul Reilly,* for appellant.

*C. Russell Phillips,* with him *Charles Townley Larzelere,* for appellees.

OPINION BY MR. JUSTICE LINN, March 30, 1936:
The question is whether a no-damage clause in the contract bars recovery. The appeal is from judgment

for defendant notwithstanding the verdict for plaintiff. By writing, August 29, 1932, plaintiff agreed to purchase from defendant 300 Hannon Stokers, also referred to as automatic stoker with blower, for $75 each on specified terms of payment, delivery, etc. The parties agreed that the stoker should be "in accordance with the sample installed at [defendant's plant where plaintiff inspected it] and approved by the Purchaser on August 16, 1932." He received all that he ordered (less than the 300 agreed to be taken) and paid for them. He desired them, as defendant was informed, to furnish a heating service to dwelling houses by attaching the stoker to the heater, supplying fuel and attending to the operation.

The second section of the contract deals with "guaranty" and "warranty" and is as follows (we have lettered the paragraphs for convenient reference):

(a) "Murray-Ohio guarantees that all apparatus shipped under this agreement will be free from defects in workmanship and material on normal use and service, and the obligations of Murray-Ohio under this guaranty is limited to making good, at the place of manufacture, any part or parts of apparatus which shall, within one (1) year from the date of shipment, be returned to Murray-Ohio at the place of manufacture and there ascertained by Murray-Ohio to be defective in workmanship or material."

(b) "Murray-Ohio warrants that said Hannon Stokers, when properly installed and regulated, will at the time of initial installation perform the functions of an automatic stoker with blower, and the obligation of Murray-Ohio under this guaranty shall be limited to the adjustment or replacement of any part necessary to make the same, upon such installation, operate as a unit."

(c) "Except as to the obligations set forth in paragraph IX hereof relating to its obligations with respect to patent infringement, the foregoing guaranty and warranty are expressly made and accepted in lieu of all other guaranties, warranties, obligations, or liabilities,

expressed or implied, by Murray-Ohio, and no claim for damages or labor sustained by the Purchaser on account of defective apparatus or otherwise, will be allowed by Murray-Ohio."

It is conceded that the stokers furnished were in accord with the sample. It is also agreed that no claim arises under paragraph (a) or for infringement of patent under section 9 referred to in (c). The suit was brought and tried on the theory that plaintiff had a right of action under the Uniform Sales Act of May 19, 1915, P. L. 543, 69 PS section 1 et seq., for breach of warranty; it is not an action to recover back, on the ground of rescission, the purchase price paid. In May, 1933, appellant sought to return some machines (and offered to return all) but defendant refused to receive them. The service which plaintiff tried to establish was not successful and he removed the stokers from his patrons.

Recovery is claimed for alleged breach of "a warranty of performance," paragraph (b). In preparing their contract the parties considered certain possible obligations, one, in paragraph (a) they called a guaranty; another, in (b), they called a warranty. The guaranty and warranty dealt with in (a) and (b) were then specifically dealt with in paragraph (c). While (a) provided for making good "defects in workmanship and material on normal use," and (b) for "adjustment or replacement of any part necessary to make the same, upon such installation, operate as a unit," paragraph (c) still further limited their agreement by excluding possible liability that might otherwise have arisen without the limitation contained in (c); and, after agreeing that the "guaranty and warranty [ (a) and (b) ] are expressly made and accepted in lieu of all other guaranties, warranties, obligations, or liabilities, expressed or implied" on the part of the seller, they sum up their agreement by saying that "no claim for damages or labor . . . on account of defective apparatus or other-

wise, will be allowed . . ." to the buyer. Their exclusion, in (c), of the right to recover for general breach of contract is specifically related to what is contained in paragraphs (a) and (b). As has been said, appellant concedes that the machines conformed to sample, that is, he got what he bought; he also concedes that defendant performed paragraph (a). No claim is made that defendant did not make the adjustments or replacements under paragraph (b) but the claim appears to be that, notwithstanding adjustments and replacements, the machine would not operate in the way he conducted his heating service. Assuming that to be so, for purposes of the argument, what is defendant's obligation? Appellant, in paragraph (c) agreed that no claim for damages should be made. To avoid the effect of the provision appellant, in the brief, presents two contentions: "1. The clause was eliminated from the contract by seller's refusal or inability to perform its undertaking, i. e., to make the machines operate. 2. The clause was expressly eliminated or waived by Hannon in the conversation of October 8th, and conduct of the parties under that modification of the contract."

By the first statement, that the clause was eliminated, etc., we assume appellant means there was a breach of contract in that the seller did not "make the machines operate," and, by the second, that the clause ceased to be part of the contract by the waiver "by Hannon in the conversation of Otcober 8th, and conduct of the parties under that modification of the contract." We shall take the second position first. It is apparently based on these facts: After about 25 of the machines had been received and had been installed and were found to be unsatisfactory to plaintiff, he called up defendant's president, Hannon, and told him that they would not work, whereupon Hannon replied that "we will get a man down there right away and we will make the machines work." Though this is denied by the defendant, for present purposes, we will accept it as a fact. At the trial when the

subject was raised and objection was made by defendant, counsel for the appellant stated they were not relying on the alleged variation. For that reason we need not consider it further.* As to the first position quoted above, we understand appellant to mean that, by not making the machines operate, defendant was in default and by that default "The clause was eliminated from the contract." Our difficulty with accepting appellant's view is that when the parties stated their agreement they dealt with the possibility of default in mind, and restricted, in paragraph (c), the measure of liability which should result if the seller defaulted; that measure is stated in the no-damage clause. The seller's default, if there was a default as appellant asserts, did not therefore eliminate paragraph (c) but, on the contrary, imposed a restriction or limitation on appellant's possible claim for damages.

Unless parties stipulate otherwise, the Uniform Sales Act of 1915 (supra) governs the sale. Here the parties made their own agreement. Section 71, 69 PS section 332, provides: "Where any right, duty, or liability would arise under a contract to sell or a sale, by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale. . . ." The seller avers that it has performed its contract as to such machines as were ordered and received by defendant. Appellant, on the other hand, asserts that, notwithstanding the no-damage clause, it may recover under section 69 (6) of the act, 69 PS section 314, providing that "The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty." It is not sug-

---

* "Mr. Swartz [of counsel for plaintiff] : We have never felt that we were varying this contract in any way by this oral conversation. The court: You are not basing your claim upon that? Mr. Schwartz: We are not basing our claim for damages upon that."

gested that the transaction is affected by fraud or mistake. The parties agree that they said what they meant. Both parties and their counsel participated in stating the terms of the contract. The seller says that it has performed but, if it has not done so in the respect complained of, the buyer has agreed that he shall have no right to recover damages. What did they mean by paragraph (c) modifying or supplementing paragraphs (a) and (b)? If unwilling to take the risk that the machine might not do what he wished to do with it, the buyer should not have stipulated, as he did, that if it failed in that respect, he should recover no damages. Section 69 of the Sales Act provides the possible remedies for breach of warranty, in substance, the right to sue for consequential damages, or the right to rescind and recover back the purchase money. These parties, by their agreement, eliminated one of these remedies. We need express no opinion on appellant's suggestion that if the seller had brought suit for the purchase price, the defense of breach of warranty would have prevented recovery (for which cases from other jurisdictions said to support his view are cited). Nor is appellant aided by cases (like *Mayfield v. Richardson Machinery Co.*, 208 Mo. App. 206, 231 S. W. 288, cited) in which the clause restricting damage was less comprehensive than that involved.

The suit, as we have said, is on the contract. No reason why plaintiff is not bound by its terms has been shown. In *Hill & MacMillan, Inc., v. Taylor*, 304 Pa. 18, 155 A. 103, the seller sued for the purchase price of a gas engine sold under a contract providing that the seller would "replace, on order without charge, any defective part within three months from date of shipment, provided examination proves the claim, and the purchaser agrees that no other claim for loss or damage of any description will be made against Hill & MacMillan, Inc." The buyer defended on the ground of breach of warranty; we held that the agreement of the

parties had made the defense unavailable, saying: "There would be much merit in the third defense were it not for the fact that the written contract between the parties provides a procedure that must be followed when there is a defective part." See, also, *Rose-Derry Corp. v. Procter & Schwartz*, 193 N. E. 50 (Mass. 1934); *Heagney v. J. I. Case Threshing Mach. Co.*, 4 Neb. (Unof.) 745, 96 N. W. 175; *Westbrook v. Reeves & Co.*, 133 Iowa 655, 111 N. W. 11; *Helvetia Copper Co. v. Hart-Parr Co.*, 142 Minn. 74, 171 N. W. 272.

The judgment is affirmed.