Runco, Appellant, *v.* Brockway Motor Company, Inc.

Argued November 8, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Samuel R. Di Francesco,* for appellant.

*Philip N. Shettig,* with him *Coleman Harrison* and *Thomas A. Swope,* for appellee.

OPINION BY HIRT, J., January 14, 1949:

On March 27, 1941, plaintiff Tony Runco agreed to buy a Brockway Tractor, Model No. 156, manufactured by the defendant, Brockway Motor Company, Inc. The sales price of the tractor was $3,740; accessories and additional equipment increased the total consideration

to be paid by Runco to $5,153. The order was signed by plaintiff and was accepted by A. E. Webb as "salesman", "Subject to the conditions printed on the Reverse Side Hereof". Prior to delivery Runco had paid him a total of $1,025 in cash and was allowed $700 on the trade-in of a Dodge truck as part payment of the purchase price. In addition, Runco signed and delivered a series of eighteen notes for $210 each payable to Baserman Garage at intervals of one month beginning June 23, 1941. These notes were secured by a conditional sales contract executed by Runco, and by A. J. Baserman who was a dealer under a consignment contract with defendant. The tractor, referred to as "the chattel" was identified in the conditional sales contract, and the notes were listed as to amounts and due dates. It was therein agreed "that title to said chattel does not by these presents pass to Buyer, but remains in Seller until the purchase price (whether evidenced by notes or otherwise, including any modifications or extensions) . . . and all other sums which may be or become due from the Buyer to the Seller . . . shall have been fully paid." The agreement contained the usual provision for repossession and retention of the chattel by the seller "upon any default in payment, or upon breach of any condition or covenant herein made by the Buyer". The Conditional Sales Agreement was assigned, and Runco's notes were endorsed over, to the Brockway Motor Company, Inc., by Baserman, on the date of their execution. Only the first three notes which matured in June, July and August 1941, were paid. Prior to March 9, 1942, Runco had delivered the tractor to Brockway Motor Company, Inc., for repairs. It made a charge of $380.49 for the parts and labor supplied which Runco failed to pay. He then was in default also in the payment of a number of his notes then past due, and on these grounds the defendant company notified him that it had repossessed the tractor under its reserved title in the conditional

sales contract. Upon plaintiff's neglect to pay the amount then owing, on notice, the defendant sold the tractor and retained the proceeds. Plaintiff brought this action to recover damages upon an alleged breach of a warranty of the tractor by the defendant company. The defense was that there was no privity of contract between the Brockway company and plaintiff. This defendant disclaimed any responsibility to the plaintiff. The jury found in favor of plaintiff for $2,355, the total amount paid or credited to him on the purchase price of the tractor. The trial judge reserved the question of law as to defendant's liability and subsequently, in the order appealed from, the court made absolute defendant's rule for judgment n. o. v. The judgment will be affirmed.

The "New Truck Order" which evidenced the transaction was on a printed form, obviously supplied by the defendant manufacturer. It contains the following warranty: "We warrant each new motor truck or bus *manufactured by us* to be free from defects in material and workmanship under normal use and service for a period of ninety days after date the original purchaser puts the truck or bus into use, or during the period of the first five thousand miles operation if such mileage accumulates prior to the expiration of the ninety day period, our obligation under this warranty being limited to making good, at our factory, any part or parts thereof which shall be returned to us with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been thus defective." (Emphasis added). This became the defendant's warranty, and responsibility under it could not be shifted to Baserman Garage. Webb was employed by defendant in its Pittsburgh Branch office and he acted for defendant in making the sale. He received the hand payments from Runco. A receipt for one payment of $550 was signed by him "for Brockway Motor Co." Baserman received

none of the down payments. The relationship between defendant and Baserman as dealer was that of consignor and consignee, under a written contract. But the tractor in question was never consigned to Baserman nor was it ever in his possession. Webb sold the tractor, and delivered it to Runco directly from defendant's factory. The "New Truck Order" provided that it ". . . shall not be binding upon Vendor until accepted by Vendor in writing hereon, by its authorized agent . . ." Defendant was the Vendor and Webb its authorized agent; this was established upon sufficient evidence by the verdict of the jury.

Although Baserman did not negotiate the sale of the tractor to plaintiff and never had possession nor title to it, he entered into the conditional sales agreement with Runco under which the defendant repossessed the truck. Any doubt as to the authority of either Webb or Baserman as agents for the defendant in the above respects is dispelled by the fact that the defendant affirmed the contract of sale made by Webb and the conditional sale agreement entered into by Baserman and acted upon them to its advantage. Cf. Restatement, Agency, §§82, 97, 98.

The foregoing discussion however is largely academic for even if the express warranty became the obligation of Brockway Motor Company, plaintiff may not recover, since this defendant has discharged its whole liability according to the terms of the writing. Between July 18, 1941 and February 28, 1942, the latter date being more than 90 days after plaintiff first put the tractor into use and after more than 5,000 miles of operation, the defendant on eight separate occasions had made repairs to the tractor at plaintiff's request, without charge for either labor or parts supplied. On the last of these occasions the speedometer registered 19,093 miles. By making these repairs, wholly without charge, the defend-

ant was more liberal with plaintiff than required by the terms of its express warranty.

Plaintiff Runco in his argument on this appeal contends that he is entitled to recover because of a breach, not of any express obligation, but of an implied warranty of fitness of the tractor for the purpose intended, which were known to the defendant at the time of the sale. The obstacles in the way of his ultimate recovery on that theory are insurmountable. True, by the sixth paragraph of §15 of The Sales Act of May 19, 1915, P. L. 543, 69 PS §124, "An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith". But the "New Truck Order" which Runco signed, following the warranty quoted above, provides: *"The foregoing obligations to make good any defective parts returned as herein provided is in lieu of all other warranties expressed or implied and all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale of our trucks or busses."* (Emphasis added). This restriction on defendant's liability, agreed to by plaintiff, limits his right of action to the terms of the writing and specifically excludes every warranty by implication. Any liability under a sales contract "by implication of law . . . may be negatived or varied by express agreement . . .": Section 71 of the 1915 Sales Act, 69 PS §332. Where the written warranty specifically excludes all other obligations, express or implied, recovery is restricted to the express warranty and is barred on any warranty by implication. *Bechtold v. Murray Ohio Mfg. Co.*, 321 Pa. 423, 184 A. 49; *The White Co. v. Francis*, 95 Pa. Superior Ct. 315, 320.

Moreover the case was tried in the court below for damages on breach of the *express* warranty. Nowhere in the statement of claim nor in plaintiff's proofs is

there any assertion or evidence of liability on an implied warranty. The theory of recovery on that ground was first advanced in the argument before the court below on defendant's rule for judgment n. o. v. On appeal we may not review the question of liability except on the theory on which the case was tried below. *Fisher, Excr., v. Brick,* 358 Pa. 260, 56 A. 2d 213.

Finally, the facts viewed most favorably to plaintiff (and assuming that the mechanical failures were due to defective materials or workmanship, and not to plaintiff's unskillful operation of the tractor) are not sufficient proof that the tractor was unfit for the purposes intended. Runco's business, known to the defendant, was "general hauling and moving" as a common carrier. The tractor in question was designed and built for highway transportation of freight. The repairs made on fifteen occasions, over a period of about 10 months of operation of the tractor for more than 19,000 miles, indicate the need for adjustments and the replacements of parts from time to time. But all of these repairs were not such as to characterize the tractor as unfit for its intended purpose. That the theory of an implied warranty, and the assertion that the truck was not fit for the intended uses, was developed as an afterthought is indicated by Runco's reaction to the defendant's notice on March 9, 1942, of repossession of the truck, under the conditional sales contract. In his letter in reply to the notice, Runco then did not question defendant's right to repossess the truck but on the contrary asked for a grace period of 10 days in which to raise the balance of the purchase price. This apparently he was unable to do.

Judgment affirmed.