TRAYLOR ENGINEERING & MANUFACTURING COMPANY, a corporation of the State of Delaware, v. NATIONAL CONTAINER CORPORATION, a corporation of the State of Delaware.

---

(*December* 13, 1949.)

LAYTON, J., sitting.

*David F. Anderson, E. Ennalls Berl* and *James L. Latchum* (of the firm of Southerland, Berl and Potter), and *Harvey H. Steckel,* of Counsel, for the Plaintiff.

*Aaron Finger* (of the firm of Richards, Layton and Finger) and *Marshall M. Bernstein,* of Counsel, for the Defendant.

Superior Court for New Castle County, Civil Action No. 468.

The discussions and preliminary negotiations regarding the purchase of the kiln culminated in a written agreement designated as a Proposal sent by Plaintiff to Defendant with a covering letter dated May 10, 1949. The letter in part stated;

"In further pursuance of our estimate and proposal dated March 7, 1945 * * * we are attaching a firm proposal covering details of the equipment which we recommend * * *."

This Proposal was executed by Defendant. Plaintiff contends that this Proposal and the letter just quoted reflected the entire agreement between the parties as to the purchase of the apparatus in question. Defendant denies this and insists that the agreement comprised not only the Proposal of May 7th and covering letter but also a certain written communication from it to Plaintiff dated March 7th and a number of oral representations or warranties concerning the effectiveness of the apparatus. These representations are as follows:

"(1) that plaintiff would give individual and personal engineering service and advice and would make a survey to ascertain defendant's individual requirements with reference to defendant's lime kiln problems, particularly with a view toward increasing the quantity and improving the quality of lime; (2) that the long kiln had been satisfactorily developed for use in the paper industry and that it had manufactured similar kilns for others in the paper industry which were operating satisfactorily; (3) that the long kiln was a preferable substitute for defendant's short kiln; (4) that the fuel consumption in operation of the said kiln and auxiliary equipment manufactured by plaintiff would be less than sixty-five gallons of oil per ton of lime produced: (5) that the kiln would easily produce seventy tons of high quality lime per day; (6) that the kiln would operate economically and without trouble with plaintiff's up to date temperature control; (7) that lime rings could not and would not form in the kiln; (8) that the quantity of dust from the kiln would not be noticeable; (9) that the lining in the kiln would last from three to five years; (10) that the kiln was entirely automatic and when the correct temperatures were set on the controls, the soda content of the mud and amount of

mud would not affect its operation since automatic controls would take care of its operation; and (11) that defendant's savings and benefits would justify the expense of purchasing and installing the long kiln."

It is the breach of the provisions of Plaintiff's letter of March 7th and of the oral representations just recited for which Defendant claims damages under its first, second and third counter-claims.

LAYTON, Judge.

It is quite clear to me that Plaintiff's letter of March 7th and the oral representations above set forth formed no part of the contract between the parties. The letter of May 10th (in which the proposal was enclosed) states that what was enclosed was a "firm proposal." The inference from this is that all discussions and negotiations up to that time had been preliminary. Even the letter of March 7th contains the pertinent statement "any time you wish to discuss this matter further * * * we will be glad to discuss the matter further with you." If any doubt remains that the agreement between these parties consisted only of the Proposal of May 7th and the covering letter of May 10th it should be dispelled by a reading of paragraph 15 of the former, which reads:

Paragraph 15:

"It is expressly understood and agreed that no officer, salesman, or agent has any authority to obligate the Company by any promises, stipulation or contention not herein expressed; that all prior representations or agreements, either verbal or written, referring to the machinery and equipment which is the subject of this contract, are hereby superseded and cancelled; that there are no promises, agreements or understandings outside of this contract, and that there are no contemporaneous arrangements induc-

ing either party to enter into this agreement, which have not been incorporated herein, and that any future variations or additions must be in writing, signed by either the President or the Treasurer of the Company, at Allentown, Pennsylvania, and a copy thereof duly signed by the Purchaser."

Neither the communication of March 7th nor the oral representations above set forth being a part of the agreement to purchase the kiln, it follows that there can have been no breach of express warranty as charged in the first counterclaim.

However, Defendant further maintains that, whether or not Plaintiff committed a breach of express warranty, it very clearly breached an implied warranty. In this connection paragraph 8 of the Proposal reads:

Paragraph 8:

"(A) The Company will repair F. O. B. works where made or furnish without charge F. O. B. its works, a similar part to replace any material of its own manufacture which within one year after shipment is proven to have been defective when shipped, provided the Purchaser gives the Company immediate notice in writing of the discovery of any such defect. No other warranty expressed or implied, concerning the subject matter of this contract, shall bind the Company without its written consent, duly execut 1 by one of its executive officers.

(B) This warranty does not include machinery not manufactured by the Company, concerning which it is agreed that there is no warranty, expressed or implied by the Company, and the Purchaser agrees to accept said machinery in sole reliance upon the warranty of the manufacturer, should there be such warranty.

(C) The Company will not be responsible for any delay or damages caused by defective material or alterations made by the

Purchaser unless made upon the written consent or approval of an officer of the Company."

Despite the unambiguous wording of paragraph 8 with respect to the negation of implied waranties, Defendant insists that it is unavailing under the law of Pennsylvania which is controlling here. *Hobart Mfg. Co. v. Rodziewics,* (1937) 125 *Pa. Super.* 240, 189 *A.* 580, admittedly contains language supporting Defendant's contention. Nevertheless, it is important to notice that the contract in that case did not expressly exclude "implied warranties." Again, *Bekkevold v. Potts,* 173 *Minn.* 87, 216 *N. W.* 59 *A. L. R.* 1164, cited by the Hobart case for the proposition that a seller cannot contract away his liability for breach of an implied warranty, very definitely does not sustain the view. To the contrary, the Bekkevold case clearly states:

"It has always been competent for the parties to put their entire agreement in writing and to expressly stipulate that no obligation arising out of an oral agreement, imposition of law, or otherwise, shall rest upon either, save as defined by their written agreement. If the parties wish to avoid the implied warranty, they must in form, or substance, contract against it."

Furthermore, the most recent expression of the Pennsylvania Courts is inconsistent with Defendant's interpretation of the Hobart case. In *Runco v. Brockway Motor Co.,* 164 *Pa. Super.* 240, 63 *A.* 2d 397, 399, the Superior Court of Pennsylvania speaking through Hirt, Judge, had this to say:

"Plaintiff Runco in his argument on this appeal contends that he is entitled to recover because of a breach, not of any express obligation, but of an implied warranty of fitness of the tractor for the purpose intended, which were known to the defendant at the time of the sale. The obstacles in the way of his ultimate recovery on that theory are insurmountable. True, by the sixth paragraph of § 15 of the *Uniform Sales Act of May* 19, (1915) *P.L.*

543, 69 P. S. § 124 subd. 6, 'An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith.' But the 'New Truck Order' which Runco signed, following the warranty quoted above, provides: 'The foregoing obligations to make good any defective parts returned as herein provided is in lieu of all other warranties expressed or implied and all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale of our trucks or busses.' (Italics added). This restriction on defendant's liability, agreed to by plaintiff, limits his right of action to the terms of the writing and specifically excludes every warranty by implication. Any liability under a sales contract 'by implication of law * * * may be negatived or varied by express agreement * * .' Section 71 of the 1915 *Sales Act, 69 P. S.* § 332. Where the written warranty specifically excludes all other obligations, express or implied, recovery is restricted to the express warranty and is barred on any warranty by implication. *Bechtold v. Murray Ohio Mfg. Co.*, 321 *Pa.* 423, 184 *A.* 49; *White Co. v. Francis*, 95 *Pa. Super.* 315, 320."

Significantly, the Runco case does not even mention the Hobart case but again cites the Bekkevold decision. I conclude that the Runco decision controls the facts of this case.[1] Accordingly, Plaintiff's motion to dismiss the second counterclaim is granted.

The motion to dismiss the third counterclaim presents difficult questions. The Defendant takes the position that if the oral representations elsewhere set out in this opinion do not constitute breaches of warranty, either express or implied, then being both false and constituting the inducing reason why it agreed to buy the kiln, the counterclaim for damages based on fraud and deceit is well founded. Plaintiff maintains (1) that the stipulations against liability for breach of express or implied warranties in

---

1. No doubt the Hobart Case is controlling where the contract does not expressly waive implied warranties.

the Proposal also extend to protect it against liability from fraudulent misrepresentations; (2) if not, then the oral representations complained of by Defendant as actionably fraudulent in character consist merely of dealers talk, puffing or statements concerning future events for which an action for deceit will not lie: (3) in any event, that the damages specified in the third counterclaim being remote, uncertain and speculative in character are not capable of being recovered. This question of damages is further complicated by Defendant's assertion that it is governed by the law of Florida, not Pennsylvania.

■■ The fraudulent misrepresentations are those same statements elsewhere recited upon which Defendant relied as warranties and damages for the breach of which are set forth in the first two counterclaims. For the purpose of this motion Plaintiff must admit making all the representations charged, their falsity and the intent on the part of Plaintiff to deceive when they were made. Although I have held that these same oral representations did not constitute warranties the breach of which was actionable because of the stipulation of the parties contained in paragraph 8 of the Proposal, Defendant is not thereby precluded from charging that they constituted fraudulent misrepresentation for which an action for fraud will lie. In other words, though one party to a contract may stipulate away his ability for breach of warranty he may not do so for fraud which induces the other to enter into the agreement. This is generally accepted law Vol. 17 C.J.S., Contracts, § 199; Vol. 37 C.J.S., Fraud, § 68. The principle is clearly established in Delaware. *Omar Oil and Gas Co. v. Mackenzie Oil Co.,* 3 *W.W.Harr.* 259, 138 *A.* 392; *Webster v. Palm Beach Ocean Realty Co.,* 16 *Del. Ch.* 15, 139 *A.* 457. There is no decision to the contrary in Pennsylvania and I must assume that the courts of that State would follow the general rule should the occasion arise.

■ Do the oral representations alleged to have been made

by Plaintiff to Defendant constitute actionable fraud? Vol. 37 C.J.S., Fraud, § 3, lays down a comprehensive definition of fraud:

"Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury. Many other statements of the elements have been made, some of which are couched in different language and most of which are less comprehensive in that they fail to mention one or more of the elements stated above."

Pennsylvania adheres generally to the principles above stated. *Emery v. Third National Bank,* 314 *Pa.* 544, 171 *A.* 881. Plaintiff contends that the representations which Defendant points to as fraud are mere puffing or expressions of opinion. A very thin line divides those statements which are, from those which are not, actionably fraudulent. I have given careful consideration to some of the cases holding that statements which are characterized as dealers talk or puffing, statements as to future events and those promissory in nature only are not actionable. *Deming v. Darling,* 148 *Mass.* 504, 20 *N.E.* 107, 2 *L.R.A.* 743; *Grone v. Economical Life Ins. Co., (Del.),* 80 *A.* 809; *Dawe v. Morris,* 149 *Mass.* 188, 21 *N.E.* 313, 4 *L.R.A.* 158, 14 *Am.St.Rep.* 404, and *Nye Odorless Incenerator Corp. v. Felton,* 5 *W.W.Harr.* 236, 162 *A.* 504, But I feel that the representations alleged to have been made here go farther than dealers talk. Defendant had a right to rely upon Plaintiff's purported special knowledge of the construction, operation and performance of its own lime kilns. At least one representation seems to have been of an existing fact and several others as to future performance of the kiln, were known to have been false when made. In a strikingly similar case, *Bareham v. McFarland & Kane,* 228 *App. Div.* 396, 240 *N.Y.S.* 123, 126, the

appellate division of the Supreme Court of New York upheld Defendant's theory of this phase of its case in the following language:

"The first defense alleges that, in order to induce the defendant to purchase the heating plant, the plaintiff falsely and fraudulently represented to the defendant 'that said heating plant would adequately and satisfactorily heat the premises owned by defendant,* * * and would give much better heat than coal; that it would heat said building to 70° F. in zero weather; that the fuel oil required to produce adequate heat in said building would not cost more than eight to ten percent in excess of the coal required in the heater then in use upon said premises, and would, in no event, exceed $350 for the season; that the gas for the pilot light would not cost to exceed $1 a month, and that the electricity would not run over $5 to $6 a month, and that the heater would run smoothly and give entire satisfaction.' There is an allegation that the plaintiff knew that said representations were false, and that defendant relied thereon in making the purchase.

*    *    *    *    *    *

"While the alleged misrepresentations in the case at bar relate to what the heating plant will do when it is installed in defendant's home, it must be remembered that the heater was either in existence at the time the statements were made, or, if it had not actually been assembled and set up, was one of a specified, definite, and certain type, which had previously been manufactured and sold, and was not an article which was to be constructed in the future, the characteristics of which were largely conjectural. What was said could easily be understood to relate to the inherent capacity, character, and quality of the heater, and what it was actually capable of doing. Giving to it such interpretation, the representations were more than mere 'dealer's talk,' or a prophecy of what would occur in the future; they were positive statements of existing facts, concerning which the plaintiff had superior and

peculiar knowledge. That being so, they could be made the basis of an action in fraud.

"The decisions of the courts indicate a disinclination to extend the rule which permits a dealer, in order to sell his wares, to indulge with impunity in statements of opinion, which turn out to be untrue."

[6, 7]   It is clear from the language of the case just quoted, and from many others considered, that the statement of an opinion not in fact entertained but made to deceive, is as actionable as the misrepresentation of a past or present fact.[1]   *Keeler v. Ley & Co., (1Cir.), 49 F. 2d 872; Seven Cases v. United States,* 239 *U. S.* 510, 517, 36 *S. Ct.* 190, 60 *L. Ed.* 411, *L. R. A.* 1916D, 164; *Restatement of the Law of Torts, Secs.* 525, 526 and 530. The third counterclaim states that each of the oral representations under consideration was not only false but known to have been false at the time made. I conclude that this claim sets forth facts which, if proved, would constitute fraud under the law of Pennsylvania.

Finally, Plaintiff contends that the counterclaim must be dismissed for the reason that the damages claimed are remote, uncertain and speculative in character, cannot be the subject of recovery, and no action can be maintained therefor. A motion to dismiss, serving, as it does, substantially the same function as our old demurrer, is not the proper method for determining what damages are recoverable in an action. 41 *Am.Jur. Pleading, Sec.* 219; *Wise v. Western Union Tel. Co.,* 7 *W.W. Harr.* 209, 181 *A.* 302. However, Plaintiff has both moved to dismiss and to strike those portions of the counterclaim seeking to recover special damages. Both under the old practice and the New Rules the question of damages may be tested by a motion to strike.

Any discussion of the law of damages in a case as compre-

---

1.   Providing, of course, the other elements going to make up actionable fraud are also present.

hensive as this and before full proof is offered by each party on the question must necessarily be general. The answer must be predicated upon the assumption, not that a breach of warranty has resulted, but rather that a serious and damaging fraud has been perpetrated upon the Defendant.

The damages here sought to be recovered include (1) the entire cost of the lime kiln alleged to be worthless (2) the cost of transporting the lime kiln and installing it in Florida (3) cost of materials for repairs and improvements (4) labor costs for repair and improvements (5) engineering costs for repairs and improvements (6) cost of extra chemicals (7) prospective cost of extra chemicals and fuels and (8) loss of profits.

In general the rule is in cases of fraud or deceit:

"* * * that defendant is responsible for those results injurious to the plaintiff, which must be presumed to have been within his contemplation at the time of the commission of the fraud, and plaintiff may recover damages for any injury for the direct and natural consequences of his acting on the strength of defendant's representations." 37 C.J.S., Fraud, § 141, Damages.

Examining the damages claimed in the light of the rule stated I decline to dismiss at this stage of the case any of the allegations except that with respect to the cost of the transportation of the kiln to Florida. In this connection I fail to find any charge that Plaintiff knew, or could reasonably have anticipated, that this kiln was to be erected and used in Florida rather than Pennsylvania. Aside from this single item I feel that Defendant has set forth damages, including loss of profits which, if properly proved, are recoverable in an action of fraud. *Vol. 37, C. J. S., Fraud,* § 141; *Yost* v. *West Penn. R. Co.,* 336 Pa. 407, 9 *A.* 2d 368; *Commonwealth Trust Co.* v. *Hackmeister Lind Co.,* 320 *Pa.* 233, 181 *A.* 787; *Koren* v. *George,* 159 *Pa. Super.* 182, 48 *A.* 2d 139. But I reiterate that this conclusion must necessarily be re-

garded as tentative until tested in the light of proven facts. Whether Defendant did all that it could within its power to mitigate damages, whether it will prove its damages with reasonable certainty as defined in *Commonwealth Trust Co.* v. *Hackmeister Lind Co., Supra,* and even whether these alleged damages were the natural and foreseeable consequences of Plaintiff's fraud are questions the final answer to which should be decided after the eviednce is fully taken.

In deciding this point I have omitted any reference to Defendant's argument that the law of Florida, not Pennsylvania, governs. Plaintiff insists, probably correctly, that the law of Pennsylvania controls. Defendant, despite its argument in this respect, seems to concede on its brief that it makes no practical difference whether the law of Pennsylvania or Florida governs. Under the circumstances, I do not feel called upon to decide the question.

Plaintiff's motion to dismiss Defendant's first and second counterclaims is granted and to dismiss the third counterclaim and strike all allegations of damages denied.