## Jarnot *v.* Ford Motor Company, Appellant.

424

Argued November 11, 1959. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*William C. Walker*, with him *David H. Trushel,* and *Dickie, McCamey, Chilcote & Robinson*, for appellant.

*A. H. Rosenberg*, with him *Rosenberg and Rosenberg,* for plaintiffs, appellees.

*George I. Buckler*, for distributor, appellee.

OPINION BY HIRT, J., December 17, 1959:

The plaintiffs, of the Borough of Export, Pennsylvania, are engaged in the trucking business as carriers of freight over the highways, both intra and interstate. For use in their business they bought a Model F-8 Ford tractor, with cab and chassis, from W. J. Tracey Company of the Borough of Braddock, this State, an authorized dealer in Ford Motor vehicles. Plaintiffs paid the full purchase price of $4,973 and took delivery of the tractor on or about June 20, 1951. In normal use for which it was manufactured and sold, the tractor on August 7, 1951 was drawing a trailer with a cargo of steel coils weighing 33,000 pounds. The tractor was then operated by a driver of long experience in the service of plaintiff. On that day the shipment was en route from Cincinnati, Ohio, bound for the Irvin Works of United States Steel Corporation at Dravosburg, Pennsylvania. On Highway Route 40, a macadam road, at a point about four miles west of the City of Washington, this State, the driver on turning the tractor on a curve to the left on a down grade suddenly heard a sharp report, "a loud cracking sound or bang" emanating from the front of the truck. An essential part of the steering mechanism—the kingpin—had broken and as a result the driver lost control of the tractor; he was unable to direct its course and could not bring it to a stop because the air line operating the brakes had been severed. As a result of the broken kingpin the right front wheel of the tractor came off its axle and was bent under the vehicle as the tractor came to rest on its right side, just off the highway. The trailer also was overturned onto its right side with the rear end extending to the center of the highway.

As to this defendant the action was in assumpsit for damages from the alleged breach of an implied warranty by Ford Motor Company, as to the fitness of the

tractor for the uses for which it was designed, manufactured and sold. The trailer could not be repaired and was a total loss; it cost $1,700 to repair the tractor. The jury found for the plaintiffs and against the Ford Motor Company in the sum of $4,800 for the value of the trailer when destroyed plus the cost of repairing the tractor. Motions for judgment for this defendant n.o.v. and for a new trial were refused and judgment was entered; hence this appeal.

In the light of the verdict we must take these facts as established by the evidence at the trial; the trailer was of conventional type, 30 feet long; the steel was properly chained and blocked to the bed of the trailer and there was no shifting of the load; the hauling capacity of the tractor was 39,000 pounds and the trailer was not overloaded; plaintiffs' employe was a driver with long experience in operating trucks and tractors; this was his third trip with the tractor here involved; he was traveling at 30 miles per hour but he had slowed down and at the time of collapse of the front end on the hill, his tractor was in "5th gear low speed"; the day was clear and the surface of the pavement was smooth and dry; there was no testimony from any witness of the existence of any hole, rut or other defect in the surface of the pavement in the vicinity of the breakdown of the tractor; plaintiffs' driver was proceeding on his proper right-hand side of the cartway and the tractor had not been involved, at any time after purchase, in any collision with any other vehicle or thing; the damages to plaintiffs' tractor and trailer were proximately caused by the failure of the kingpin, the broken pieces of which were seen by the witness who first arrived at the scene.

Upon sufficient competent evidence the verdict also establishes that after the first trip of the tractor another driver had complained of hard steering and a noise in the front end; the tractor was then sent in to

the Tracey Company for adjustment, but was returned to plaintiffs with the comment that there was nothing wrong with it. The mileage on the tractor at the time of its failure was 3,000; it had been sent in to Tracey after 2,224 miles for a check-up and Tracey's record of the service required at that time contains a notation "steering too tight". In the morning of August 7, 1951 the truck had functioned normally on the trip out of Cincinnati but later on this its last trip the driver heard a noise, intermittently, which he described as a "crack or bang". Plaintiffs produced a witness who qualified as an expert metallurgist. The diameter of the kingpin was one inch and its surface was case hardened to a depth of 80/1000 of an inch; to fulfill its purpose a slot or notch was milled into every kingpin and it was at the notch, which plaintiffs' witness referred to as its weakest point, that the break occurred. The jury properly inferred from the testimony of this witness that the break resulted from a defect in the pin. And whether the plaintiffs could recover did not rest upon a specific finding that the break was due to brittleness caused by excessive depth of the case hardening. Moreover Ford's liability does not depend on whether the failure of the pin was a result of a "fatigue fracture" (i.e., a progressive fracture starting at the weakest point of the material and ending in a complete break) or an impact fracture caused entirely by the force of a sudden jolt. The failure of the kingpin, happily, is a rare occurrence, but one of Ford's expert witnesses, employed in its metallurgical department admitted that he had seen "5, 6 or 7" of them which had broken in service. That there possibly may be an inherent defect in a kingpin was admitted by Timken which supplied Ford with the pins. A representative of that manufacturer testified that they tested one out of every 100 pins as manufactured; that it was impossible to test every kingpin for defects, be-

cause the test involved destroying the pin by cutting it in two. The Ford Motor Company also "spot checked" two out of every shipment from Timken, for defects.

Attached to the order for the purchase of the tractor addressed to W. J. Tracey Company and signed by the plaintiff, there was a "Ford Motor Company Warranty" to this effect: "The Ford Motor Company Warrants all such parts of new automobiles, trucks and chassis, except tires, for a period of ninety (90) days from the date of original delivery to the purchaser of each new vehicle or before such vehicle has been driven 4,000 miles, whichever event shall first occur, as shall, under normal use and service, appear to it to have been defective in workmanship or material. This warranty shall be limited to shipment to the purchaser without charge except for transportation, of the part or parts intended to replace those acknowledged by the Ford Motor Company to be defective. The Ford Motor Company cannot, however, and does not accept any responsibility in connection with any of its automobiles, trucks or chassis when they have been altered outside of its own factories or branch plants." The tractor was serviced, but it was not "altered" by the Tracey Company and the Ford Motor Company cannot be allowed to shift its responsibility to its distributor for the failure of the tractor on that ground. Moreover the warranty applies exclusively to the replacement of a defective part, and it has no bearing on the question of the liability of Ford Motor Company where the failure of a defective part results in damages covered by another and distinct implied warranty, of merchantability and fitness of the vehicle for the intended use.

*Runco v. Brockway Motor Co., Inc.,* 164 Pa. Superior Ct. 240, 63 A. 2d 397 and *Bechtold v. Murray Ohio Mfg. Co.,* 321 Pa. 423, 184 A. 49, upon which appellant places much reliance are readily distinguishable. In

the *Runco* case, on appeal to us the plaintiff sought a reversal of the judgment in favor of the defendant, notwithstanding the verdict in favor of the plaintiff for his damages in a substantial amount, because of alleged mechanical failure of a tractor due to defective parts. In the written sales contract the manufacturer limited its liability to replacing any parts which in its judgment were found to be defective. And in the *Bechtold* case the express warranty was limited "to adjustment or replacement of any part necessary to make the same, upon such installation [in an automatic stoker] operate as a unit". In each of the above appeals however the appellant plaintiff was denied recovery for the reason that the written warranty was expressly accepted in lieu of all other warranties "express or *implied"*; this conclusion followed from an application of the principle that where the written warranty specifically excludes all other obligations express or *implied,* recovery is restricted to the express warranty. This result is in accord with §71 of the 1915 Sales Act, 69 PS §332 (in effect at the time the instant cause of action arose) to the effect that liability under a sales contract "by implication of law . . . may be negatived or varied by express agreement." But even a provision in a contract of sale that the contract contains all of the agreements between the parties does not preclude an implied warranty of merchantability. *Frigidinners v. Branchtown Gun Club,* 176 Pa. Superior Ct. 643, 109 A. 2d 202; *The White Company v. Francis,* 95 Pa. Superior Ct. 315. Cf. Laub, Trial Guide, §§549.4, 549.8 and 549.6 where it is said: "Even though a sales contract may negative a warranty because not contained in the writing, this does not preclude evidence of an implied warranty." Moreover, a manufacturer who by means of advertising extols his product, in the effort to persuade the public to buy, may thereby incur liability to a purchaser notwithstanding privity be-

tween the purchaser and the manufacturer is wholly lacking. Cf. 42 Marquette Law Review 4, p. 521 (1929) and 8 Cleveland-Marshall Law Review, 1, p. 14 (1959). Because of the principle of advertised-product-liability the trial court in the instant case cannot be convicted of error by a passing reference to Ford's national advertising even though no advertisement was made a part of the record.

Section 15 of The Sales Act of May 19, 1915, P. L. 543, 69 PS §124, is to this effect: "Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality." And under §69 of the same Act, 69 PS §314: "Sixth. The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty." A person, who after the purchase of a thing, has been damaged because of its unfitness for the intended purpose may bring an action in assumpsit against the manufacturer based on a breach of implied warranty of fitness; and proof of a contractual relationship or privity between the manufacturer and the purchaser is not necessary to impose liability for the damage. Cf. *Loch v. Confair*, 361 Pa. 158, 63 A. 2d 24; *Silverman v. Samuel Mallinger Co.*, 375 Pa. 422, 100 A. 2d 715. There is some analogy in the principle referred to by Mr. Justice PAXSON in *Conestoga Cigar Co. v. Finke*, 144 Pa. 159, 172, 22 A. 2d 868, long before The Sales Act, supra. In *Mannsz v. Macwhyte Co.*, 155 F. 2d 445, it was held that under Pennsylvania Law privity between the injured party and the manufacturer is not required, to impose liability on the manufacturer either on grounds of negligence or on grounds of breach of warranty. That case was cited in *Silverman v. Samuel Mallinger Co.*, supra, in

support of the above principle. On the facts, *Knapp v. Willys-Ardmore, Inc.*, 174 Pa. Superior Ct. 90, 100 A. 2d 105 (in which we allowed recovery under an implied warranty of merchantability in general, and of fitness in particular), is perhaps most nearly analogous, to the instant action, of the cases in our reports.

The question of a plaintiff's contributory negligence does not arise here in an action of assumpsit on a contract as it does in trespass for personal injuries. Cf. *Maize v. Atlantic Ref. Co.*, 352 Pa. 51, 41 A. 2d 850. The principle applicable to contracts appears thus in the Restatement, Contracts, §336: "(1) Damages are not recoverable for harm that the plaintiff should have foreseen and could have avoided by reasonable effort without undue risk, expense, or humiliation." Under the facts in this case the plaintiff cannot be barred in the application of that principle.

The jury found for the plaintiff against the Ford Motor Company, alone. The lower court molded the verdict to read "for the plaintiff and against the W. J. Tracey Motor Company with liability over against the Ford Motor Company in the amount of $4,800." This was error. The primary responsibility was upon the manufacturer, the Ford Motor Company, for the defective kingpin and judgment under the proofs could be entered only against that company on the verdict as returned by the jury. *Birdsong v. General Motors Corp.*, 99 F. Supp. 163.

The judgment is stricken as to the W. J. Tracey Motor Company and as so amended, is affirmed as to Ford Motor Company.