Edward **PRIMROSE**

v.

**PHILADELPHIA DRESSED BEEF COMPANY.**

Civ. A. No. 29557.

United States District Court
E. D. Pennsylvania.

Oct. 5, 1965.

**596**

James Francis Gannon, Philadelphia, Pa., for plaintiff.

Harry J. Oxman, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This case is now before the court on Defendant's Alternative Motion for Judgment Notwithstanding the Verdict under 50(b) or a New Trial (Document 22) filed after the jury had returned a verdict for plaintiff in the amount of $8,428.-23 in this action, based on alleged breach of warranty and, in the alternative, alleged negligence of defendant in supplying alleged unfit animal feed which is claimed to have caused the death of plaintiff's minks.

The jury was entitled to find the following facts, which, except for the words in brackets, are quoted from pages 1–2 of defendant's brief:

"In early June of 1960, the plaintiff purchased approximately two thousand pounds of mink feed from Russell's Feed Company, in Coventry, Connecticut. * * * Delivery [of more than 80 boxes of defendant's frozen animal food] was made [on June 2, 1960] to a Bob Stetson, an employee of Russell's Feed Company, at the defendant's plant [by placing the boxes in a truck owned by Russell Feed Company]. This delivery was made on June 2, 1960, and the shipment consisted of five hundred and twenty boxes, totaling thirteen-thousand pounds. [See P–5]

"The defendant's product was packed in corrugated wax lined boxes which were two and a half inches deep by twenty-four inches long and eighteen inches wide. [Eighty of these boxes were delivered to plaintiff at his mink farm, on June 3, 1960.]

\*    \*    \*    \*    \*    \*

"The plaintiff used the defendant's product as one of the ingredients in a mink food mixture made by him at his ranch. Approximately two weeks after the plaintiff began using the defendant's product, he noticed that some of his animals were dying. These deaths continued for approximately two more weeks, during which time the plaintiff attempted to treat his sick animals by himself.

"In late June of 1960, the plaintiff took some bodies of the dead animals to the University of Connecticut for examination. The plaintiff, also, delivered samples of certain of the food products, which he had been using, to the University for analysis.

"A spectographic analysis of a sample of the defendant's product, es-

tablished that it contained thirty parts per million of barium salt. During a two week period, examinations were made of thirty-two animals submitted to the University by the plaintiff, and these examinations revealed that many of the animals died from gastro-intestinal hemorrhage. It was, also, established that three of the animals submitted for examination died from common mink diseases.

"During the months of June and July, * * * seven hundred and [one] animals of [plaintiff's] herd died."[1]

## I. *Causation*

■ Plaintiff's expert testified that (a) he found no barium in the tissue of the minks which he examined since he had no tests in his laboratory to determine the presence of "barium salts in tissue samples" (pp. 24, also 26–32, of Document 21) and (b) insoluble barium (a non-toxic form of barium) would be unresolved in the intestinal tract (p. 25 of Document 21). Although he examined the intestines of the minks (p. 31 of Document 21), he made no mention of finding any barium in them. Soluble barium is "highly toxic" (p. 25 of Document 21). When the plaintiff stopped feeding the minks the defendant's product

and administered the antidote prescribed by the doctor, the unusual rate of death among his animals ceased (N.T. 181–5). There was sufficient evidence before the jury to justify it in finding that defendant's product contained soluble barium salt in quantities lethal for minks, particularly since plaintiff's expert testified that he inferred the barium was soluble after assuming that the feed contained 30 parts per million of barium in accordance with Dr. Botsford's testimony.[2] The trial judge explained to the jury that it was up to them to decide whether they would make this inference or not make it (N.T. 751 and 764–5).[3]

Plaintiff's expert testified (pp. 18–19, 26–28 and 34 of Document 21) that, in his opinion, 29 of 32 minks examined by him died from soluble barium in defendant's feed based on these two assumptions:

(a) there were 30 parts per million of barium in the feed, and

(b) the barium was soluble (pp. 27–28 of Document 21).

■ An opinion based on stated assumed facts is admissible. See Yardley v. Cuthbertson, 108 Pa. 395, 449–450, 1 A. 765 (1885); Laudenslager v. Penna. P. & L. Co., 312 Pa. 169, 172, 167 A. 778

1. As shown on sheet entitled "Plaintiff's Contentions on Damages" (which the trial judge has had marked C–1), the plaintiff's claim as submitted to the jury was limited to 631 minks, due to the ruling of the trial judge that, because approximately, but less than, 10% of the analysed minks died from common mink diseases rather than the gastro-intestinal hemorrhaging from food poisoning as stated in the opinion of plaintiff's experts, the plaintiff's claim must be limited to the least valuable 90% of the total mink the jury found died (N.T. 727–9 and 757). See Royston Distributors, Inc. v. Moore-McCormack Lines, Inc., et al., Opinion of 6/4/65, 252 F. Supp. 480 (E.D.Pa., No. 171 of 1960 in Admiralty and No. 399 of 1960 in Admiralty), and cases cited on pages 488, 489.

2. At page 28 of Document 21, this expert testified that, unless the barium

found by the chemist in the mink feed was soluble, "I would be at a loss to explain how these 29 animals died." See, also, N.T. 716–7.

3. At N.T. 764–5, the trial judge said: "If there was no soluble barium, there was no negligence, and there was no breach of warranty, * * * His expert says that the animals that died, died of the barium. So if they did not die from that, he has not established a death for which the defendant could possibly be responsible. * * * If the evidence for the plaintiff is greater, then the plaintiff has established that point, and then he has to go on and you have to consider the damages, assuming you find that the defendant put the soluble barium in the food, and that it did not get there some time later."

598

(1933); see, also, § 682(d) of II Wigmore on Evidence (3d Ed.), p. 810.[4]

The trial judge explained to the jury that they might reject the opinion of an otherwise qualified expert if they found "that he was making an assumption that you did not feel had been established by the weight or the fair preponderance of the evidence." (N.T. 752).

II. *The record justified the submission to the jury of the negligence issue.*[5]

 Since the jury was justified in finding that the feed was taken directly from the manufacturer's plant to the plaintiff's (ultimate user's) place of business and the packaging cartons had no lids, the jury was justified in finding negligence on the part of the defendant and the cases cited on page 12 of defendant's brief (Document 30) are distinguishable. See Rozumailski v. Phila. Coca-Cola B. Co., 296 Pa. 114, 117–119, 145 A. 700 (1929); cf. Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 25, 68 A.2d 517 (1949).

III. *Exhibit P–1A was admissible as past recollection recorded (see N.T. 447 & 458 ff.)*

 Since Exhibit P–1A was made from the original records (such as P–2) made by plaintiff at a time when they were available and such original records were made at or about the time of the events recorded and when such events were fresh in the mind of plaintiff, Exhibit P–1A was admissible as past recollection recorded. See Christian Moerlein B. Co. v. Rusch, 272 Pa. 181, 187–188, 116 A. 145 (1922); see, also, V Wigmore on Evidence (3d Ed.) §§ 1420 and 1421.

The following language of Judge Body in his opinion of August 18, 1965, in Walsh v. Miehle-Goss-Dexter, Inc. v. Edward Stern and Company, Inc., D.C., 244 F.Supp. 692, is appropriate on this record:

"On a motion for judgment notwithstanding the verdict or for a new trial, the evidence and inferences fairly to be drawn therefrom must be considered in a light most favorable to the party having the verdict and against whom the motion is directed; and if the evidence and inference considered in such manner would permit reasonable men in the exercise of their judgment to reach different conclusions respecting the critical issues, the motions should be denied. Downey v. Union Paving Co., 184 F.2d 481 (3d Cir. 1947).

"The Court has found no prejudice, after carefully reviewing the entire case, and accordingly, will not alter the verdict of the jury."

The able briefs of counsel have been filed as Documents 30 and 31.

ORDER

And now, October 5, 1965, it is ordered that Defendant's Alternative Motion for Judgment Notwithstanding the Verdict under 50(b) or a New Trial (Document 22) is denied.

---

4. It is also noted that Wigmore states that an inference may be based on an inference. I Wigmore, supra, § 41, p. 434 ff., quoting Neely v. Provident Life & A. Ins. Co., 322 Pa. 417, 185 A. 784 (1936).

5. Authorities supporting liability on the basis of warranty are 12A P.S. 2–313, 2–314 and 2–315; Jarnot v. Ford Motor Co., 191 Pa.Super. 422, 156 A.2d 568 (1959); Mannsz v. Macwhyte Co., 155 F.2d 445 (3rd Cir. 1946).