## Evelyn G. Frederick Health Center v. G. R. Sponaugle & Sons, Inc.

*Roger T. Shoop,* for plaintiff.
*Jack M. Hartman,* for defendant.

MORGAN, *J.,* December 8, 1982—This was a suit by E. G. Frederick Health Center (Health Center) for damages allegedly suffered as a result of improper performance by defendants of a building construction contract. A jury made special findings upon which the trial judge entered a verdict for the Health Center against defendant, G. R. Sponaugle & Sons, Inc. (Sponaugle) for $68,448.35. Sponaugle has moved us to arrest the judgment or mold the verdict.

The following is a background for consideration of the issues raised by the post-verdict motion:

During construction of the Health Center in 1975, Sponaugle, a subcontractor, supplied and installed a 10,000 gallon in-ground fuel oil storage tank. In 1978 some 9,000 gallons of oil escaped from the tank into the surrounding soil, much of it finding its way into a nearby stream. Besides the loss of oil, the Health Center paid the cost of a clean-up ordered by the Department of Environmental Resources. Unearthed, the tank was found to be dented and cracked. Sponaugle was called in and did certain repair work on the tank but in 1980 it began leaking again and this time the Health Center replaced the tank.

Health Center then filed this suit which went to a jury as against both Sponaugle and the manufacturer of the tank, defendant Adamson Company, Inc. (Adamson), in trespass on counts of (1) strict products liability and (2) negligence; and, as to Sponaugle alone, in assumpsit on an additional count (3) of breach of implied warranty of fitness.

The jury was requested to make special findings, 1 through 4 of which related to the issue of strict

products liability. The jury found that the tank was not defective when delivered to the job site. There was thus no liability of either defendant on this theory.

Questions 5 through 13 related to the negligence theory of recovery and the findings of the jury absolved Adamson from any liability on this ground also. The jury found, however, that Sponaugle and Health Center were both causally negligent as to the 1978 leakage and damages, fixing the comparative negligence of Sponaugle at 72.5 percent and that of the Health Center at 27.5 percent. Sponaugle was held solely responsible for the loss in 1980.

In the answers to questions 14 and 15, the jury found that in 1978, before reduction for its own causal negligence, Health Center had sustained damages of $57,728.06 and, in 1980, $10,720.29.

The jury also found as to questions 16 and 17, which related to Health Center's third theory of recovery, that Sponaugle did breach an implied warranty of fitness and that this breach was a substantial factor in causing the foregoing damages.

Rejecting Sponaugle's argument that any award to the Health Center for the damages suffered in 1978 should be reduced by the percentage of its own causal negligence as found by the jury, the trial judge ruled that this finding was not relevant to recovery on the alternative theory of breach of implied warranty and entered a verdict for Health Center for the full amount of its damages, $68,448.35.

The trial judge erred.

The argument advanced by Health Center to support the trial judge's ruling is that contributory negligence is not a defense in an action for breach of warranty, citing Jarnot v. Ford Motor Company, 197 Pa. Super. 422, 156 A.2d 568 (1959). This proposi-

tion is quite correct, of course, in terms of a complete bar to recovery in such an action, but that is not what we are dealing with here.

The general rule in Pennsylvania as elsewhere, recognized in Jarnot as applicable to claims for breach of implied warranty, is that a plaintiff may not recover for harm resulting from defendant's wrongful act or omission that the plaintiff reasonably could have avoided. See Restatement (Second) of Contracts, §350. Sponaugle contends that the findings by the jury of Health Center's causal negligence was a finding of failure to mitigate damages under this doctrine of avoidable consequences. We agree.

In the course of his charge, the trial judge instructed the jury at some length on mitigation of damages but failed to submit a question to the jury for a specific finding on this issue. The issue was included, however, under the question addressed to them as follows: "9. Was the plaintiff contributorily negligent in regard to the leakage and resulting damages in 1978?" The question was broad enough, considered along with the charge, to include the failure of Health Center to use reasonable effort to avoid further harm after the original injury had already occurred. The jury's other findings make it plain that its affirmative answer to question 9 related to this failure.

The original litigated event in this matter was the existence of cracks in the oil tank. The only evidence against Health Center as conduct contributing to these events was the approval by its architect of an allegedly defective design. When the jury found as a fact in answer to the first question submitted to them, that the tank was not defective when delivered by Adamson to the job site, the only remaining issue of Health Center's negligence un-

der the evidence had to do with whether it should have discovered the leaks earlier and taken other measures to prevent the loss of oil and environmental damage. This was plainly and simply "avoidable consequences" and the jury's finding cannot reasonably be construed any other way. In a clear case, we should mold the verdict so that it will agree with the obvious intention of the jury. Wadatz, Admrx, Aplnt., v. Taormina et al, 356 Pa. 481, 52 A.2d 220 (1947).

For the foregoing reasons, we enter the following

## ORDER

And now, December 8, 1982, the motion of Sponaugle & Sons, Inc. is granted and the verdict heretofore entered in the above matter is molded to read: In favor of plaintiff and against defendant, Sponaugle & Sons, Inc. in the sum of $52,573.13, together with delay damages thereon as provided by Pa. R.C.P. 238.